IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 2:15-cr-00245

STEVEN ADKINS,

        Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

Steven Adkins, by counsel, submits this memorandum in advance of his sentencing hearing, which is currently set for July 25, 2016. In light of Mr. Adkins's cooperation, the nature and circumstances of his offense, and the sentences imposed on similarly situated defendants, Mr. Adkins respectfully suggests that a sentence of probation, without the condition of home confinement, is appropriate in this case and fully consistent with the sentencing factors set forth in 18 U.S.C §3553(a).

## Background

Steven Adkins, thirty-eight years of age, was born and raised in Logan County, West Virginia. Mr. Adkins's father was never married to his mother and deserted the family when Steven was approximately one year old. Steven had no recollection of this man as a child and did not meet his father until he was nineteen years of age. He has not seen his father since.

Steven has a brother, Billy Blair, who lives in Aberdeen, Maryland. Billy is fourteen years older than Steven. Billy never lived with Steven. When Billy was a child, he lived with his mother's parents and, due to the age difference, there was very little contact between Billy and

Steven initially. When Steven was still young, Billy married and moved in the Fayette County area of West Virginia. Upon Billy's marriage, although he lived two and a half hours form Steven, the relationship between Billy and Steven could best be characterized as a father-son relationship. Billy treated Steven as a son along with his other children. Steven went hunting, camping, fishing, and spent holidays with his brother and his extended family in the Fayette County area.

When not with his brother, Steven lived with his mother in the Logan County area. Steven's mother received welfare but she also worked for the town of Man, cleaning, and she worked at the South Man Grade School as a custodian also.

Although Steven had every opportunity in the world to follow the decline of the coal industry in southern West Virginia, he managed to stay in school and out of trouble. Steven committed no juvenile offenses and he has never been a user of illicit drugs, nor does he drink. Steven, under the guidance of his brother and mother, completed high school and almost immediately went to work. In Steven's senior year of high school, he did not graduate in May, but he graduated in December because he needed one English class. Around the first of December 1995, as Christmas break approached, every day after his class was completed at 9:30 a.m., Steven went to Uncle Sam's Loans and asked for a job. Finally, apparently impressed with Steven's determination, Steven was given a job at Uncle Sam's Loans. Steven worked there continuously from January of 1996 until August 2015 with the exception of a two-year break.

Uncle Sam's Loans, when Steven started working there, was owned by Roger and Louise Muncy. Over the years, the relationship between the Muncys and Steven became extremely close. In very many ways, Steven considered Roger as a father, and Roger considered Steven as a son. In approximately 1997, Roger Muncy had a series of heart attacks, strokes, and seizures.

During that period of time, Steven became Roger Muncy's caretaker of sorts. Steven would help feed Roger. He would dispense Roger's medication. He would help clean Roger when necessary, took Roger to his doctor's appointments, and anything else that Roger Muncy needed. By 2004 or 2005, Roger started missing a lot of work because of his illness. More and more, Roger and Louise Muncy depended on Steven to keep the business running.

During Steven's tenure at Uncle Sam's Loans, he has been active in community affairs. He has served on the Park Board of the City of Man, and is presently on the City Council of Man, West Virginia. In addition, Steven coached Little League for one year and softball for three years.

In addition to the above, Steven married in 1996. His son, Lucas, was born approximately two years later. As pointed out in the presentencing report, Lucas is a special needs adult, as Lucas just turned eighteen years of age. Steven and Lucas are close but after the divorce, Lucas stayed with his mother. Recently, Lucas turned eighteen and has moved in with his father, Steven.

### Sentencing Factors

- *Significant Acceptance of Responsibility*. Steven has clearly accepted responsibility for his actions involving the improper firearm purchases ("straw purchases"). He has met with government agents on several occasions for extensive debriefings. One debriefing lasted more than four hours. Steven now understands the gravity of his offense and he realizes that his soon-to-be status as a convicted felon will have consequences on him for the rest of his life. One of the things the presentence report indicates is Steven's trips to Canada with friends for fishing. Of course, as a convicted felon, there will be no more

fishing trips to Canada. Steven accepts these consequences and understands he will have to move forward from this point.

- *Unwarranted Sentencing Disparities.* Steven and counsel believe that the ultimate sentencing guideline range will require incarceration. Steven, for many reasons, is asking the Court to place him on probation. This case involves straw purchases of firearms. The government suggests that Steven is the leader or organizer of a group of people that falsified ATF forms. In the discovery that Steven has received from the government, the statements of one Scott Edward Ellis, who has stood before this Court for sentencing, is clear that in late 2003 Mr. Ellis started paying cash kickbacks to coal mine employees in order to obtain business. Mr. Ellis states that it made him uneasy to cash the large amount of checks that were in his name to obtain cash to pay kickbacks. Mr. Ellis advised the government that he solicited Roger Muncy to cash business checks for Ellis at Uncle Sam's Loans. As the Court knows, Mr. Muncy accepted the offer and began cashing large checks for Mr. Ellis. Mr. Muncy, as a fee for laundering the money, charged Mr. Ellis 10%. In other words, a ten thousand dollar check made payable to Uncle Sam's Loans would yield nine thousand dollars cash to Mr. Ellis. Louise Muncy would not only charge 10%, but she would add 6% "sales-tax" on the fee. Mr. Ellis was quite clear in his debriefing statements to the government that "the entire scheme to traffic firearms started with Roger Muncy."

    Roger and Louise Muncy have not been charged with anything and the statute of limitations on their crimes has expired. Mr. Ellis received three years' probation and a three thousand dollar fine. None of the people that signed the ATF forms as the purchaser of the firearm have been charged. The statute of limitations has now run.

## CONCLUSION

Mr. Akins respectfully suggests that this Court is justified in substantially departing and varying from the advisory Sentencing Guideline range to a sentence that would permit a term of probation to be imposed, without the condition of home confinement. Mr. Adkins does not anticipate presenting any live testimony at sentencing, unless necessary to rebut any such testimony presented by the government.

Respectfully submitted,

STEVEN ADKINS
By Counsel

/s/ Gregory J. Campbell
Gregory J. Campbell, Esq. (WVSB# 608)
CAMPBELL LAW OFFICE
105 Capitol St., Ste. 300
Charleston, WV 25301
Phone: 304-546-9494

IN THE UNITED STATES DDISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 2:15-cr-00245

STEVEN ADKINS

    Defendant.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2015, I filed the foregoing **Defendant's Sentencing Memorandum** using the Court's CM/ECF system, which will cause a copy to be served upon the following:

    Meredith George Thomas
    Assistant United States Attorney
    Robert C. Byrd Courthouse
    300 Virginia Street East, Suite 4000
    Charleston WV 25301

    <u>/s/ Gregory J. Campbell</u>
    Gregory J. Campbell, Esq. (WVSB# 608)